IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TRAVIS BLANK, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-cv-465-O |
| | § | |
| ERIC D. WILSON, Warden | § | |
| FMC-Fort Worth, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Travis Blank, a federal prisoner confined at FMC-Fort Worth in Fort Worth, Texas.[1] Blank asserts two unrelated claims for credit towards his sentence. He contends that he is due approximately fourteen months of prior custody credit for time he spent on pre-trial home confinement. Pet. 1–8, ECF No. 1. He also seeks restoration of 27 days of good conduct time removed as a result of a finding of guilt in a disciplinary proceeding. *Id.* 8–13. After considering the pleadings and relief sought by Petitioner and the applicable law, the Court has determined that the § 2241 petition must be denied.

**I.    BACKGROUND**

  **A.    Claim Seeking Credit for Time Served on In-Home Confinement**

Petitioner Travis Blank was convicted in the United States District Court for the Eastern District of Texas in cause number 4:11-cr-067-001 on two counts: transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1) (Count 1); and possession of child

---

[1]In addition to the typed § 2241 petition, the Court has a response from the Respondent with an appendix, along with Petitioner's reply with an appendix. Petition, ECF No. 1; Response, ECF No. 5; Response Appendix (App.), ECF No. 6; Reply/Appendix, ECF No. 7.

pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count 2). App. 21, ECF No. 6.[2] He was sentenced to a term of 121 months on Court 1 and 120 months on Count 2, to run concurrent to Count 1, for a total sentence of 121 months' imprisonment. *Id.* at 22.

Blank was originally arrested in the Eastern District of Texas on June 29, 2009 for possessing, mailing, transporting, and shipping child pornography. App. 5, Ronald Williams Declaration, ¶ 4, ECF No. 6. He was indicted on July 8, 2009, and on April 14, 2010, he was released on bond. *Id*. at 5, ¶¶ 5, 10. On March 3, 2011, that indictment was dismissed without prejudice. App. 12, ECF No. 6. On the same day, Blank was again charged by criminal complaint in the Eastern District of Texas and was arrested and appeared for his initial appearance in federal court. App. 17, 19, ECF No. 6. He was released on bond that same day subject to pre-trial conditions. *Id*. at 19. On June 22, 2011, after trial to a jury, Blank was found guilty of transportation of child pornography and possession of child pornography. App. 5, Williams Declaration, ¶ 7, ECF No. 6; *see United States v. Blank*, No. 4:11-cr-067 (June 22, 2011 Jury Verdict).[3] He was remanded to the custody of the United States Marshals Service (USMS) on that same day and has remained in continuous federal custody. App. 5, Williams Declaration, ¶ 7. The 121 month sentence of imprisonment was imposed on October 27, 2011. App 21–23, ECF No. 6.

Blank's federal sentence commenced on October 27, 2011, the day it was imposed. App. 30, ECF No. 6. He was awarded prior custody credit from June 29, 2009, the first day he was arrested, through April 14, 2010, the day he was released to home confinement pending trial. *Id.* He was also awarded credit for March 3, 2011, the day of his second arrest. *Id.* Finally, Blank was awarded credit

---

[2]The Court will cite to the ECF page numbers as assigned to the imaged copy of the Respondent's appendix on the Court's docket.

[3]The Court takes judicial notice of the records of the United States District Court for the Eastern District of Texas in *United States v. Blank*, No.4:11-cr-067. *See* Fed. R. Evid. 201(b)(2) and (c)(1).

from June 22, 2011, the day he was convicted and remanded to custody, through October 26, 2011, the day before his federal sentence commenced. *Id.* The Bureau of Prisons (BOP) presently projects that Blank will be eligible for release from custody on July 11, 2019. *See* www.bop.gov search of Travis Blank, No. 16486-078, last visited January 25, 2019.

**B.     Claim Challenging Disciplinary Proceeding and Loss of Good Time**

On February 7, 2014, Special Investigative Services (SIS) staff at FMC-Fort Worth intercepted an incoming letter to an inmate who was housed in the Special Housing Unit (SHU). App. 32, Paula Bledsoe Declaration; App. 36, Incident Report, §§ 11–12, ECF No. 6. After reviewing the letter, the SIS staff member determined that the letter had been written by another inmate at FMC-Fort Worth. App. 36, § 11, ECF No. 6. A search of the return address revealed that the sender was a member of Blank's family. *Id.* The staff member wrote an incident report charging Blank with violating prohibited act code 296, use of the mail for abuses, and code 328, attempting to receive anything of value from another inmate. *Id.* §§ 9-10. Blank received a copy of the incident report later that same day. *Id.* §§ 14–16. After the investigating officer advised Blank that he had a right to remain silent during the investigation, Blank waived his right and admitted to writing the letter, stating "I am on Commissary Restriction. He said he would buy me some food, deodorant, hygiene, that sort of stuff until I'm off it. I knew it was wrong. I sent the letter through my dad since I knew I couldn't send it from here." App. 38, §§ 23–24, ECF No. 6.

The incident report was referred to the Unit Disciplinary Committee (UDC), which met on February 10, 2014. App.37, § 21, ECF No. 6. The UDC forwarded the charges to the DHO for further hearing. *Id.* at § 18.B. That same day Blank was provided written notice of the DHO hearing and the charges against him and was advised of his rights at the DHO hearing. App. 40, ECF No. 6. He was advised that he had: (1) the right to a written copy of the charges against him at least 24

3

hours prior to appearing before the DHO; (2) the right to have a full time staff member who was reasonably available to represent him at the hearing; (3) the right to call witnesses and present documentary evidence on his behalf, provided institutional safety would not be jeopardized; (4) the right to present a statement or to remain silent; (5) the right to be present throughout the disciplinary hearing, except during deliberation or when institutional safety would be jeopardized; (6) the right to be advised of the DHO's decision, the facts supporting that decision, and the DHO's disposition in writing; and (7) the right to appeal the DHO's decision through the Administrative Remedy Procedure to the Regional Director within twenty days of the DHO's decision and disposition. App. 42, ECF No. 6. Blank waived his right to a staff representative and to call witnesses. App. 40, ECF NO. 6.

The DHO hearing was held on April 3, 2014. App. 44, § I.B, ECF No. 6. The DHO advised Blank of his right to have a staff representative, and Blank again waived his right. *Id*. § II. A. He did not request any witnesses. *Id*. § III. B. & C. During the hearing, Blank admitted to circumventing the mail system and offered the statement that, "Yes, I did send a letter to another inmate in SHU through my people out on the street." *Id*. § III. B.

The evidence considered by the DHO included the written account of the SIS officer who reviewed the letter during routine monitoring, a copy of the letter, and Blank's testimony. App. 45, § V, ECF No. 6. Based on the greater weight of the evidence, the DHO found that Blank had committed the prohibited act 296, use of the mail for abuses other than criminal activity. *Id*. at § IV.B. The DHO also found that Blank did not violate code 328 and found him not guilty of that charge. *Id.* § V. The DHO made a written statement of the evidence relied upon in finding that Blank had committed the offense and provided Blank a with a copy of that statement. App. 45–46, §§ V & IX, ECF No. 6. Blank was sanctioned with the loss of 27 days of good conduct time, loss of

telephone privileges for three months, and loss of commissary privileges for three months. App. 46, § VI.

## II.     EXHAUSTION

Respondent asserts that Blank has failed to exhaust his administrative remedies for both claims. Resp. 10, ECF No. 10. Federal prisoners must exhaust administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Exceptions to the exhaustion requirement apply only in "extraordinary circumstances" when administrative remedies are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Id.*

As noted above, Blank is eligible for release in a little over five months on July 11, 2019. Because adherence to the exhaustion requirement would serve no purpose other than delay, the undersigned considers Blank's claims on the merits. *See generally Trusty v. Upton*, No.4:13-cv-1022-O, 2014 WL 4409823, at *2 (N.D. Tex. Sep. 8, 2014) (though exhaustion raised, addressing claim on merits where inmate was eligible for home detention within seven months).

## III.     ANALYSIS

### A.     Claim Seeking Credit for Time Served on In-Home Confinement

Blank asserts that he is entitled to approximately fourteenth months of pre-trial custody credit for the time he was on home confinement from April 14, 2010 through June 22, 2011.

Federal law provides that a defendant "shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences." 18 U.S.C. § 3585(b). Blank was not committed to the custody of the Attorney General when he was released on bond. The "official detention facility" in section 3585 refers "to a correctional facility designated by the [BOP] for the service of federal sentences, where the [BOP]

5

retains the discretion to 'direct the transfer of a prisoner from one penal or correctional facility to another.'" *Reno v. Koray*, 515 U.S. 50, 58 (1995) (citing 18 U.S.C. § 3621(b)). "The court may either (1) 'release' the defendant on bail or (2) order him 'detained' without bail." *Id*. at 57. If bail is not appropriate, "the court 'shall order the detention of the person,' . . . by issuing a 'detention order' 'direct[ing] that the person be committed to the custody of the Attorney General for confinement in a corrections facility." *Id.* (citing 18 U.S.C. § 3142(i)(2)).

"[A] defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions . . . is 'released.'" *Koray*, 515 U.S. at 57; *see also Siebert v. Chandler*, 571 F. App'x 328, 329 (5th Cir. 2014) (rejecting defendant's claim to credit for pre-conviction time in home confinement, "[b]ecause he was not committed to the custody of the Attorney General or subject to the BOP's control, he was not in official detention for purposes of 18 U.S.C. § 3585(b) . . . ."). "This is an important distinction, as the identity of the custodian has both legal and practical significance." *Koray*, 515 U.S. at 63. "Unlike defendants 'released' on bail, defendants who are 'detained' or 'sentenced' *always remain subject to the control of the [BOP]*." *Id*. at 63 (citation omitted) (emphasis in original). A defendant who is not subject to BOP's control cannot be summarily reassigned to a different location, is not subject to BOP's disciplinary system, and is not subject to BOP's "full discretion to control many conditions of [his] confinement." *Id.*

Blank contends that his home confinement release required electronic monitoring, unannounced home visits from a pretrial services officer, being prohibited from leaving his home except for scheduled medical appointments and to attend religious services. Pet. 6–7, ECF No.1. He was required to pay for his medical care and was prohibited from working, having a cell phone or computer, or contacting any potential witnesses. He asserts that his home confinement was more

stringent than someone who is on home confinement after serving a prison sentence, and claims that his home confinement resulted from the government's failure to provide proper medical care during his pre-trial detention. Blank asserts that these circumstances justify his receiving credit against his sentence for the time he spent on home confinement.

But as the Supreme Court noted in *Koray*, "the Bureau [of Prisons], as the agency charged with administering the credit statute . . . has interpreted § 3585(b)'s 'official detention' language to require credit for time spent by a defendant under a § 3142(e) 'detention order,' but not for time spent under a § 3142(c) 'release order,' *no matter now restrictive the conditions*." *Koray*, 515 U.S. at 60, n.4 (emphasis added)(citing BOP Program Statement No. 5880.28(c) Definition section which provides: "A condition of bail or bond which is 'highly restrictive,' and that includes 'house arrest', 'electronic monitoring' or 'home confinement'; or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention"); *see Whitley v. United States*, No. 2:07-cv-980, 2007 WL 3251943, at * 1 (W.D. La. Sep. 17, 2007) (rejecting claim that defendant released on bond but under house arrest and subject to electronic monitoring and having to report to pre-trial services, was in official custody) (citing *Koray*, 515 U.S. at 56); *Barton v. Van Buren*, No. 4:06-cv-799-Y, 2007 WL 1766775, at * 3 (N.D. Tex. June 18, 2007) ("Barton is not entitled to credit for the time she spent while released on bail in the CCC or on home confinement with electronic monitoring because she was not in 'official detention' within the meaning of § 3585(b)") (citations omitted); *see also Siebert*, 571 F. App'x at 329 ("Siebert was not entitled to credit against his sentence for the time spent in home confinement"). Thus, even though Blank's home confinement was combined with restrictive conditions, as he was not in official detention, that factor does not change his lack of eligibility for credit for the time he spent in home confinement.

In support of his claim to sentence credit for his period of home confinement, Blank also asserts that in another lawsuit he filed, the United States Court of Appeals for the Fifth Circuit held that his release to home confinement did not obviate the need for exhaustion of administrative remedies. Pet. 8, ECF No. 6 (citing *Blank v. Tabera*, 544 F. App'x 480 (5th Cir. 2013)). Blank argues that if he was required to exhaust administrative remedies before filing that lawsuit, he must have been considered a confined prisoner under 42 U.S.C. § 1997e(a), and, if he was a confined prisoner, then he was in fact entitled to have his 14 months credited against his sentence. Pet. 8, ECF No. 6. But *Blank v. Tabera* is distinguishable on the law and the facts.

*Blank v. Tabera*, was a civil action filed under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), asserting deliberate indifference to Blank's serious medical needs while he was in official detention prior to his conviction. *Tabera*, 544 F. App'x at 481; s*ee Blank v. Tabera*, No. 4:12-cv-052-A (Jan. 25, 2012 complaint)(underlying case filed in the Northern District of Texas).[4] The Fifth Circuit affirmed the district court's grant of summary judgment for the defendants because Blank failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). *Tabera*, 544 F. App'x at 481. In that case, Blank contended that he was excused from exhaustion because he was transferred out of FMC-Fort Worth on February 18, 2010, was ill for a couple of months afterward, and was later placed on pre-trial release. *Id*. The Fifth Circuit held that "[s]ummary judgment was proper because Blank's illness and transfer did not excuse him from exhausting his administrative remedies and his home release did not obviate the need for exhaustion." *Id*.

A review of the complaint in *Tabera* shows that Blank complained wholly of events that

---

[4] The Court takes judicial notice of the records of this the Northern District of Texas in *Blank v. Tabera*, No. 4:12-cv-052-A. *See* Fed. R. Evid. 201(b)(2) and (c)(1).

8

allegedly took place between January 2010 and February 2010, while he was in still in custody and prior to the April 14, 2010 release to home confinement. *See* Complaint 3–6, *Blank v. Tabera*, No. 4:12-cv-052-A, ECF No. 1. Thus, Blank was detained and had been in custody during the period of time he claimed that he was subjected to deliberate indifference to his medical needs. The fact that he was subsequently released to home confinement, therefore, was irrelevant to the requirement that he had to commence the exhaustion of administrative remedies process while he was still in custody. Thus, Blank's reliance on the Fifth Circuit analysis in *Blank v. Tabera* is misplaced.

For all of the reasons set forth, the Court finds and determines that Blank is not entitled to credit against his sentence for the approximate fourteenth month period of home confinement between April 14, 2010 through June 22, 2011.

**B.  Claim Challenging Disciplinary Proceeding and Loss of Good Time**

Blank claims that his due process rights were violated during the complained of DHO hearing because the term "unauthorized person" as used in the charged code 296 violation is so vague that he did not know that he was committing a violation by mailing a letter to his father and instructing him to mail it to another inmate. Pet. 9–11, ECF No. 1. For relief, Blank seeks return of the 27 days of lost good conduct time. *Id.* at 13.

In the context of a prison disciplinary proceeding resulting in the loss of good time credits, constitutional due process requires that a prisoner at a minimum receive (1) written notice of the charges against him at least twenty-four hours prior to the disciplinary hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense, and (3) a written statement from the factfinder that includes the evidence relied on and the reasons for the disciplinary action taken. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Blank was afforded all of these due process protections during the disciplinary process. He does not assert otherwise.

Upon review of a prison disciplinary action, a court must simply consider whether the decision of the prison authority was supported by "some facts" or "any evidence at all." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981). Due process does not require that the evidence in such a proceeding eliminate all other possible conclusions. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56 (citation omitted). The reporting staff member's incident report, standing alone, constitutes some evidence. *Hudson v. Johnson*, 242 F.3d 534, 536-537 (5th Cir. 2001). "Federal courts cannot retry every prison disciplinary dispute; rather the court may only act where arbitrary or capricious action is shown." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994).

A review of the record of the disciplinary proceedings shows that the DHO had some facts to support the finding that Blank committed the prohibited act of use of mail for abuses other than criminal activities. The evidence before the DHO included the written incident report, which constitutes some evidence. *See Hudson*, 242 F.3d at 536-537. But the evidence also included (1) the investigator's report that Blank admitted that he knew what he did was wrong and that he had mailed the letter to his father to mail to the SHU inmate because he knew he could not mail the letter himself; (2) Blank's statement to the UDC that he knew what he did was wrong and that he sent the letter through his dad because he knew he couldn't send it; and (3) Blank's admission to the DHO that he had circumvented the mail system by sending a letter to another inmate in SHU "through [his] people out on the street." App. 44, III. B, ECF No. 6. There was sufficient evidence to support the DHO's findings and punishment.

Furthermore, Blank's assertion that the term "unauthorized person" as used in prohibited act code 296 is impermissibly vague is without merit. The Fifth Circuit has recognized in the context of a challenge to a disciplinary proceeding, "we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."*Adams v. Gunnell*, 729 F.2d 362, 368-69 (5th Cir. 1984) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (other citation omitted). Determining whether a rule is impermissibly vague as applied to Blank therefore requires examining whether he had fair warning that his conduct was prohibited. *See Adams*, 729 F.2d at 369; *see also Reeves*, 19 F.3d at 1061.

The prohibited act is set forth in BOP Program Statement 5270.09, Inmate Discipline Program. It reads, in part:

> Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending, or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization; sending correspondence to a specific address with directions or intent to have the correspondence sent to an unauthorized person; and using a fictitious return address in an attempt to send or receive unauthorized correspondence.)

BOP Program Statement 5270.09, at page 48 (2011). This description of the prohibited act is also set forth in the federal regulations. *See* 28 C.F.R. § 541.3, Table 1 (2017).

Further, correspondence sent by inmates at a minimum or low security level institution such as FMC-Fort Worth may be sealed by the inmate and sent out unopened and uninspected by staff unless, among other reasons, the correspondence is between inmates. *See* 28 C.F.R. § 540.14 (2017); BOP Program Statement 5265.14, Correspondence, at page 8 (2011). By sending a letter intended for another inmate to his father for mailing, Blank knew that it would not be opened or read by staff, and thus, he circumvented mail monitoring.

Moreover, BOP policy provides that correspondence between confined inmates is prohibited

unless it is specifically approved. *See* 28 C.F.R. § 540.17 (2017); BOP Program Statement 5265.14, Correspondence, at pages 13-14 (2011). The rules delineate a specific approval process for an inmate who wishes to correspond with another inmate. *Id.* If an inmate does not receive approval to correspond with another inmate, the other inmate is an unauthorized person for purposes of correspondence. Blank, therefore, had fair warning that his conduct was prohibited.

In sum, Blank was aware that his conduct was prohibited when he was interviewed by the investigating officer, and the BOP rules on correspondence are clearly stated. The phrase "unauthorized person" was not unconstitutionally vague such that Blank did not know that his conduct was prohibited and, therefore, there was no violation of Blank's Fifth Amendment right to due process. Consequently, Blank is not entitled to relief on his claims challenging the disciplinary proceeding and loss of good time credit.

### IV. MOTION TO RULE ON MERITS

Blank recently filed a "Motion to Rule on the Merits of Petitioner's Motion for Habeas Corpus (28 U.S.C. § 2241)." ECF No. 11. As the Court has now resolved the merits of Blank's claims for relief under §2241, this motion will be dismissed as moot.

### V. ORDER

It is therefore **ORDERED** that the Motion to Rule on the Merits of Petitioner's Motion for Habeas Corpus (28 U.S.C. § 2241), ECF No. 11, is **DISMISSED** as moot.

It is further **ORDERED** that Travis Blank's petition for writ of habeas corpus under 28 U.S.C. § 2241 is **DENIED.**

**SO ORDERED** on this **25th day** of **January, 2019.**

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**